## CASEY v. GALLI.

1. When a national banking association is insolvent, the order of the comptroller of the currency, declaring to what extent the individual liability of the stockholders shall be enforced, is conclusive. *Kennedy* v. *Gibson and Others,* 8 Wall. 498, cited and approved.
2. When his order is to collect an amount equal to the full par value of the stock, the suit by the receiver against the stockholder must be at law, and that amount will bear interest from the date of the order.

3. In such a suit the stockholder is estopped from denying the existence or the validity of the corporation.
4. No authority other than that conferred by Congress is required to enable a bank existing under a special or a general State law to become a national banking association. The certificate of the comptroller is conclusive as to the completeness of the organization under the act of Congress in a suit against a stockholder to enforce his liability, or a party upon his contract with the bank.
5. A plea is bad which sets up that the comptroller has decided to pay a large amount of claims for which the bank is not responsible, and that, aside from these claims, there are means enough to meet the just liabilities of the bank.

THIS was an action at law, brought in this court by the receiver of the New Orleans National Banking Association, to enforce the individual liability of the defendant as a stockholder of that institution.

The defendant is a subject of the kingdom of Italy, and its vice-consul at the city of Philadelphia.

By agreement, and in order to present for the consideration of the court several of the grounds of defence, the defendant filed a demurrer to the declaration, and also pleas in abatement, without reference to the order of pleading them, and subject to the future direction of the court in disposing of them. The plaintiff joined in demurrer to the declaration, and demurred to the pleas in abatement, and the defendant joined in demurrer.

The questions thus presented by defendant's demurrer are, —

1. Whether the proceeding to enforce the liability of the defendant should not be in equity and not at law.

2. Whether to sustain the action at law it is sufficient to aver the necessity of enforcing the liability, and that such necessity has been declared by the comptroller of the currency without stating facts from which the court can determine the necessity.

3. Whether the order by the comptroller to collect from each stockholder the entire amount for which he is liable, is conclusive upon the defendant, without the allegation of any facts showing the amount which he is liable to contribute.

The questions raised by the plea in abatement are, —

4. Whether a majority of the directors, with the authority of the owners of two-thirds of the stock of a State bank, can change its organization into that of a national banking associa-

tion without any authority given by the State law in its charter or otherwise to make the change.

5. Whether the certificate of the comptroller is conclusive as to the organization and existence of the association.

The pleadings are set out in the opinion of the court.

*Mr. J. D. McPherson* for the defendant.

1. The State corporation never became a national bank, notwithstanding the assent of the owners of two-thirds of the stock. No number less than the whole could accept a charter from the United States, nor even then without an enabling act. Green's Brice on Ultra Vires, p. 539, note, and cases cited; *Head* v. *Providence Insurance Co.*, 2 Cranch, 127, 166; *Manufacturers' and Merchants' Bank* v. *Commonwealth*, 72 Penn. 70. See Enabling Acts of Massachusetts, New York, Pennsylvania, Vermont, and other States.

2. The remedy of the plaintiff is in equity. As shareholders " are only conditionally liable for those debts after all the ordinary resources of the bank have been exhausted," *Bank* v. *Kennedy*, 17 Wall. 19, 22, and as the assets here have not been exhausted, an account must be taken of debts and assets in order to ascertain the deficiency; and as for such deficiency the shareholders are only " equally and ratably " liable, the ascertainment of the proportion calls for the exercise of equity powers. *Pollard* v. *Bailey*, 20 id. 520.

3. The declaration only avers that the comptroller has determined that shareholders must pay the par value of their stock to pay the debts of the bank. The special plea avers that among the debts so intended to be paid by the comptroller are certain disputed claims, which are not debts of the bank.

Congress cannot withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit either at law, in equity, or in admiralty. *Murray's Lessee* v. *Hoboken Co.*, 18 How. 284.

Whether the claim be a valid demand against the shareholder is in its nature a judicial question, *The Empire Bank*, 18 N. Y. 199, and must be open to contest by the shareholder in a suit to enforce his liability. Id.; *Slee* v. *Bloom*, 20 Johns. (N. Y.) 669. Any amount exacted from him in this suit can never be reclaimed, but must go to the creditor. It

is not assets of the bank.    *Dutcher* v. *National Marine Bank,*
12 Blatchf. 435.

Mr. *Charles Case,* contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The declaration avers as follows: On and before the third
day of June, 1864, the Bank of New Orleans was a banking
corporation organized under the laws of the State of Louisiana,
and as such carried on the business of banking until about the
first day of July, 1871, when the bank, by due proceedings under
the act of Congress, entitled " An Act to provide a national cur-
rency, secured by a pledge of United States bonds, and to provide
for the circulation and redemption thereof," approved June 3,
1864, became a national banking association under said act of
Congress, and as such took the name and style of the " New
Orleans National Banking Association," and carried on the
business of banking until the fourth day of October, 1873,
when it failed and suspended payment.

Thereupon, the comptroller of the currency, after due pro-
ceedings had, appointed a receiver for the association, and it
was put in liquidation under the act of Congress before men-
tioned and the acts amending it, and the plaintiff is such
receiver, being lawfully appointed under the said act.   By the
conversion of the Bank of New Orleans into such banking
association every holder of the shares of the capital stock of
said Bank of New Orleans became a shareholder of the capital
stock of said New Orleans Banking Association to the amount
of his shares, and as such subject to the liabilities imposed by
said act of Congress on such shareholders.   There is owing by
the association to its creditors large sums of money.   Its assets
are insufficient to pay its debts.   It has become necessary, in
order to pay the debts, to enforce the liability of the share-
holders.   The comptroller has decided that this shall be done.
On the seventh day of June, 1875, by his order in writing, he
required the plaintiff, as such receiver, to enforce such liability
against each stockholder to the amount of the par value of his
stock held at the time of the failure of the association.   The
capital stock of the association was $600,000; divided into
twenty thousand shares of the par value of $30 each.

The defendant is an alien, a subject of the kingdom of Italy, and vice-consul, &c. At the date of the failure of the association he was the owner of fifty shares of the capital stock of the par value of $30 for each share. By reason thereof he is liable to pay the sum of $1,500. He has been specially requested to pay that sum, and has refused to do so. The plaintiff is, therefore, entitled by force of the statute to recover the said sum of $1,500, with interest at the rate of five per cent per annum.

It was agreed by the parties that demurrers, pleas, replications, and other pleadings might be filed without reference to the order in which they were properly pleadable.

The defendant demurred to the declaration, and assigned the following causes: —

1. That the defendant is bound to contribute ratably, and that the proper amount can be ascertained only in equity.

2. That the defendant is bound to contribute ratably to pay a large sum; that this sum is not stated in the declaration, and hence what would be ratable and proper does not appear.

3. That the obligation of the defendant is to pay into the hands of the comptroller of the currency a ratable portion of the debts of the association proved before him, and that the declaration does not show that any debts had been so proved.

4. That the declaration demands a larger sum than the defendant is required by the statute to pay, and also an additional sum by way of interest.

In regard to the first three of these objections, it is sufficient to say that *Kennedy* v. *Gibson and Others*, 8 Wall. 498, is conclusive against them. It is there said that the amount to be paid rests in the judgment and discretion of the comptroller; that his determination cannot be controverted by the stockholders in suits against them; and that, when the order is to collect the full amount of the par of the stock, the suit must be at law. It is unnecessary to reproduce the reasoning of the court in support of these propositions. The sum to be paid being liquidated, and due and payable when the comptroller's order was made, it follows that the amount bears interest from the date of the order. Otherwise there would be no motive to pay promptly, and no equality between those who should pay then

and those who should pay at the end of a protracted litigation. The defendant filed three pleas in abatement: —

1. *Nul tiel corporation.*

2. That there was not then, nor when the plaintiff was appointed such supposed receiver of said New Orleans Banking Association, nor before nor since that time, any such corporation in existence, because the Bank of New Orleans had no power by its charter, nor authority otherwise from the State of Louisiana, to change its organization to that of a national banking association under the laws of the United States; wherefore it was prayed that the declaration be quashed.

3. That there was not then, nor when the plaintiff was appointed such supposed receiver of the New Orleans Banking Association, nor before nor since that time, any such corporation in existence, because the owners of two-thirds of the capital stock of the Bank of New Orleans did not authorize the bank to be converted into a national banking association under the laws of the United States, nor to accept an organization certificate as such banking association; wherefore it was prayed that the declaration be quashed.

The plaintiff filed a joint demurrer to all these pleas. At the argument the first plea was abandoned. The other two remain to be considered.

The pleas were properly framed in abatement, and not in bar. *Jones* v. *The Bank of Tennessee*, 8 B. Mon. (Ky.) 122; *Woodson* v. *The Bank of Gallipolis*, 4 id. 203.

The second plea is clearly bad. No authority from the State was necessary to enable the bank so to change its organization. The option to do that was given by the forty-fourth section of the Banking Act of Congress. 13 Stat. 112. The power there conferred was ample, and its validity cannot be doubted. The act is silent as to any assent or permission by the State. It was as competent for Congress to authorize the transmutation as to create such institutions originally.

The third plea is also bad.

The eighteenth section of the act requires the comptroller to make a careful examination in all cases of original applications, and, if he found the association was "lawfully entitled to commence the business of banking," he was to give a certificate

to that effect; and it is declared that the association "shall transact no business except such as is incidental to its organization, and necessarily preliminary, until authorized by the comptroller of the currency to commence the business of banking." 13 Stat. 101. A like examination and certificate are required by the forty-fourth section, where an existing bank organizes under the act. That section provides "that when the comptroller shall give to such association a certificate, under his hand and official seal, that the provisions of this act have been complied with, and that it is authorized to commence the business of banking under it, the association shall have the same powers and privileges and shall be subject to the same duties, responsibilities, and rules, in all respects, as are provided in this act for associations organized under it." 13 Stat. 113.

The declaration avers that the association became such by due and regular proceedings under the act. The plea denies the regularity of the proceedings in the single particular that the owners of two-thirds of the capital stock of the bank did not authorize the directors of said bank to convert it into a national banking association, nor to accept an organization certificate as such banking association. According to the law of pleading, what is not denied is conceded. The giving of the comptroller's certificate is covered by the averment in the declaration, is not denied by the plea, and is, therefore, to be taken as admitted. The plea proposes to go behind the certificate, and contradict it. This cannot be done. The comptroller was clothed with jurisdiction to decide as to the completeness of the organization, and his certificate is conclusive upon the subject for all the purposes of this litigation.

It has the same effect, and for the same reason, as his determination and order with respect to the amount to be collected from each stockholder in the event of the failure of the association. No question can be raised in this collateral way as to either.

In Thacher v. The West River National Bank, 19 Mich. 196, it was held that whether there was any defect in the process of organization was a question for the comptroller to decide, and that " his certificate of compliance with the act of Congress

removes any objection which might otherwise have been made to the evidence upon which he acted."

In this we concur.

There is another ground upon which both- pleas must be held bad. Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice. Parties must take the consequences of the- position they .assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics. require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it. *Eaton et al.* v. *Aspinwall,* 19 N. Y. 119 ; s. c. 6 Duer (N. Y.), 176 ; *Cooper* v. *Shaver et al.,* 41 Barb. (N. Y.) 151 ; *Camp* v. *Burne,* 41 Mo. 525 ; *Danbury & N. Railroad Co.* v. *Wilson,* 22 Conn. 435 ; *Ellis* v. *Schmock & Thomas,* 5 Bing. 521 ; *McFarlan* v. *The Triton Ins. Co.,* 4 Denio (N. Y.), 392 ; *Rector & Co.* v. *Lovett,* 1 Hall (N. Y.), 191 ; *Topping* v. *Beckford,* 4 Allen (Mass.), 121 ; *Dooley* v. *Wolcott,* id. 407 ; *Eppes* v. *Railroad Company,* 35 Ala. 33 ; *Hamtramack* v. *Bank of Edwardsville,* 2 Mo. 169 ; *Jones* v. *Cincinnati Type Foundry,* 14 Ind.- 88 ; *Worcester Med. Ins.* v. *Harding,* 11 Cush. (Mass.) 285 ; *Hughes* v. *Bank of Somerset,* 5 Litt. (Ky.) 47 ; *Tar River Nav. Co.* v. *Neal,* 3 Hawks (N. C.), 520. *Demurrer sustained.*

At a subsequent day of the term, pursuant to leave granted, three pleas were filed. The questions arising upon demurrers to the special pleas were argued by the same counsel.

Mr. Justice Swayne delivered the opinion of the court.

Since the opinion of the court was delivered in this case, the defendant obtained leave to plead further, and has filed three pleas. They are : —

*First, Nil debet,* upon which the plaintiff has taken issue.

*Second,* That the comptroller of the currency has " deter-

mined and decided to exact from the defendant, and from a number of stockholders of said National Banking Association less than the whole, such sums of money as would suffice to pay all the debts and liabilities of the said National Banking Association, with the intent and purpose to compel this defendant and others of said shareholders who may be solvent to contribute the entire sum necessary to pay the debts and liabilities of the said National Banking Association, without any contribution from those who are insolvent."

It is a sufficient objection to this plea that the comptroller has ordered that each stockholder shall pay to the receiver the par of his stock. This order cannot be controverted in a suit against the stockholder. It is conclusive upon him, and makes it his duty to pay. *Kennedy* v. *Gibson and Others*, 8 Wall. 498. What may be done or intended with respect to other stockholders is immaterial in his case.

The plea is, also, manifestly bad for vagueness and uncertainty.

*Third*, That the comptroller has decided to pay a large amount of claims against the bank for which the bank is not responsible, and that, aside from these claims, there are means enough already in his hands to meet the liabilities of the bank.

The same objection lies to this plea as to the preceding one, and the same authority applies. If the receiver intends to violate, or shall violate, his duty in discharging the trust confided to him, the remedy must be sought in another proceeding. It cannot avail the defendant in this action.

Both demurrers are sustained.

The parties have filed a written stipulation submitting the issues raised upon the first plea to the court and waiving the intervention of a jury.

With respect to this issue, we find the proofs in the record amply sufficient to sustain the plaintiff's case.

Judgment must, therefore, be rendered against the defendant for the par of his stock, with interest, as claimed in the declaration, and costs; and it is                          *So ordered.*